May it please the court, my name is Greg Miller. I represent the appellant Michael Pina. I would like to reserve four minutes for rebuttal and I would like to take this opportunity to introduce to the court Mr. Dan Mooney, who's at council table. He's a third year law student at Seattle University and he helped tremendously on the reply brief and I think you should get credit for that. The court's indicated from the other cases it's been reading the record. The central issues in this appeal from 12 v. 6 dismissal of Mr. Pina's two claims has three main components. Number one, that he has a liberty interest in whether he is listed as a level three sex offender based on facts beyond his conviction or beyond those underlying his conviction. Number two, the knowing and arbitrary misuse of authority by the Department of Corrections appellees in treating Mr. Pina as a level three offender when they had no authority to do so and he had not been so classified. And number three, the violation of Mr. Pina's clearly established right fundamental to ordered liberty to have freedom from coercive police interrogation, which was what occurred with all the polygraph examinations. Well, let me, I'm just going to, I think this is a difficult case for a lot of reasons. But I think that I think you're really pushing a rock uphill trying to say that this is clearly established. And I think as we probably go into talking about all of this that it really will appear how difficult this is. And, you know, I mean, one of the things that's different about, all right, Mr. Pina is, he's convicted of a crime in the first place. And then we get into things that happen after people are convicted. And so first you can tell me if there are any clearly established cases that talk about this. But the reality of what happens here is we're going to have probation officers supervising people. We're going to have them making decisions about, you know, assessment of risk relative, you know, to the entire community. And also someone, if they're assessed, you know, when you're on supervised release or, you know, anything, you can always request modification of interjecting if there isn't already, if there isn't a clearly established right to say that there's some sort of right that we're going to be in the business of those that, you know, after someone's already been convicted of an offense, then they clearly have some risk factor that we're going to be jumping in and second guessing what all of these, you know,  Well, thank you, Judge Callahan. And that's really where we need to go on this case because that's the big issue. I mean, is there any case that you can tell me that just says all the things that he's contending that have come, that are wrong, that will just say you can't do that? I mean, I can't find it. No, of course you can't find it because this is the first case that will do it for a level three sex offender in Washington State. So then how can it be clearly established? Because you have the cases that we cited, including the ones, Humphrey v. Heck. No, not Humphrey v. Heck. That's Heck v. Humphrey. That's a different issue. Okay. That's another problem. And you may not have seen it yet, and I apologize for that. We cited in a 28-J letter on Friday, Humphrey v. Los Angeles County, which is Judge Bivey's decision from 2009. And that's a case where they were addressing what are the effects from the child abuse reporting statute, where you have a data reporting bank for child abuse. And that's the kind of case and the analysis that you apply. You often get a situation where you do not have the exact same facts because you can't have the exact same facts, or otherwise you would never get a determination. But you use the same principles. And the statutory structure for those child abuse reporting cases are very similar. You have no way out. You get reported. You are brought in. Judge Bivey's case, they found qualified immunity, didn't they? They may have found qualified immunity, but they found substantive due process was violated. So let me, I have trouble with the case unless I break it up by constitutional amendment. Because each one of these, there may not be, as you say, there's not a big gorilla case that tells you the answer to all this. So let's start with the Fifth Amendment. Why isn't your case barred by Chavez v. Martinez, which basically says until you actually are compelled in a criminal proceeding, you don't really have this Fifth Amendment right? And that may be correct, Your Honor. We may be barred on that element of it. But it goes to the substantive due process claim. Let's say, okay, except the Fifth Amendment. Now let's go to, I guess you're saying that... I don't want to be so quick on that. I want to assume the arguendo, yes. That's a potential problem. A potential problem, I understand. Then the elevation of the risk status, you're saying that is a substantive due process violation. No. When we're talking, I think if we start from the Fifth Amendment, we're talking about the polygraph examinations. Okay. And when, even though you may not have a direct Fifth Amendment violation under Chavez, under the remand case from Judge Bybee, you do have a... Not Judge Bybee. You do have a substantive due process problem where someone has had their rights violated. Right. But see, the difficulty up there is that you can't really... If your issue is encompassed within an amendment, you can't then hop off over to substantive due process under 1983. And the Fifth Amendment polygraph usage is actually covered. So I'm having trouble to see why you could get a substantive due process claim out of that. But there may be other amendments which are implicated here. You've argued the sixth, I know. It would be a substantive due process claim under the Fourteenth Amendment, but it was based on his Fifth Amendment rights. So it's not the violation of the Fifth Amendment right. It's the fact that it gets... Okay. It's a well-established right necessary to order liberty. And that is what... Could you help me, though? So do you have a case that says even if his right was not violated under a particular amendment, that you can then go to substantive due process and sweep back in the amendment as the foundation for your substantive due process? So it's more of a kind of a constitutional construct question. Yes, no, I understand that. And, frankly, that's what I thought that Martinez v. Oxnard did. Okay, I'll take that. And that's the remand case, 337 F. 3rd, 1091. That's the case that after Chavez was reversed by the Supreme Court, this Court sent it back and it said you have a substantive due process claim because your right under the Fifth Amendment is a well-established right. And while you may not be able to enforce it in the sense under Chavez because you don't have a criminal trial in which that testimony is being admitted or sought to being admitted, you still have the right to be free from that coercive interrogation. And I think I'm down to two minutes on rebuttal if I'm reading this correctly, Good morning. May it please the Court. My name is Andrea Vingo, and I represent the Washington State Department of Correction appellees in this matter. Counsels for the two sets of appellees in this matter have agreed to split the argument time with the department having seven of the total minutes, or if there's more time I will provide that to counsel in this case. Well, would you be able to answer the question, does the Supreme Court's decision in Connecticut Department of Public Safety v. Doe indicate that sex offenders have a liberty interest in a pre-assessment hearing if, as here, the risk level is based in part on non-adjudicated facts? Absolutely. Like the states, the kids, the boys from other states. Absolutely not. Connecticut Doe never reached the issue of whether sex offender registration involves a liberty interest at all. And to quote the Court at page number eight, because the question is not properly before us, we express no opinion as to whether Connecticut's registration law, indeed any registration law, violates principles of due process. That's registration, though, here. That's registration, right? Here we're talking about this risk assessment. And they did the risk assessment. A lot of it was based on things that I think may not have been problematic, but there were some allegations from out of state that had never really been adjudicated, right? Correct. And so it could be like, I mean, we all know that there are certain things, I mean sometimes people in dissolution procedures allege molestation and they turn out to be absolutely false or they're never prosecuted or whatever. And so we really don't, those statements that were factored into his risk assessment level, you know, aren't tested in any sort of procedure. Whereas he is a convicted offender. So that, you know, that I'm really comfortable with. But these other ones, you know, what would be his mechanism to challenge those? Okay, let me answer that in two parts. The mechanism for him to challenge that is to challenge a sex offender leveling, it's to file a writ of review in superior court challenging arbitrary and capricious actions. That's under revised code of Washington 716-040, and it was supported in in re-detention of Enright that I cited. That's one of the means of challenging it. The other is that he could file a defamation action that asks for an injunction in this case. I think the other part of the answer to your question or where you were going to with the question is that Russell is controlling on this court. Mr. Pena essentially from, because of what he's asking in this case, he's asking for this court to do exactly what it cannot do, and that is to overturn Russell. Russell was decided by a three-judge panel, is controlling here, and has already held on page 1094 that as a matter of law, the Washington State Sex Offender Registration Act, which has not changed since the time that case was decided, does not violate the ex post facto clause, the right to privacy, or the due process clause. And in doing so, the Russell court has already considered and rejected each of the liberty interest claims that Mr. Pena makes here. I don't think he has a privacy claim, but what Judge Callahan was referencing, and my question was I think his due process claim is basically the change of status. Now, are you saying that that's part of the operation of the statute that Russell covers? Because that's his claim is that. Is it the risk analysis? Elevation of your risk analysis. Registration. I think that's what, is risk analysis and registration, are they both handled in Russell? They are both handled in Russell. They are both addressed in Russell. Are they addressed specifically, or is it just by generally that the whole statute? No, I'd say about the first two-thirds of Russell deals with the registration portion, but the last third of it deals with the, I believe, with the levels. But really the thing that the court has to remember is that in order to find due process, it's just the basic understanding that there has to be a liberty interest involved. And I know that in a lot of these situations it may seem like an uncomfortable result, but if there's not a liberty interest, then there isn't the due process that's required. Now, I guess I could conceive of there might be some point where someone could establish a liberty interest, but the question is, I believe that the appellant's asking it to do pre-assessment, in terms of to say in the pre-assessment stage that he's got a liberty interest. But let's just say that someone put, you know, because if you're risk three or risk two or whatever, it controls where you can live, certain activities that you can do, all of those things. What if it was just like completely wrong, or someone did it maliciously, or something like that? You know, at some point, wouldn't someone be able to do something about that? Absolutely, at that point where you can file a defamation claim. But the court needs to remember that anything that's being released to the public is already public record already. Those are the facts of the conviction. You know, the only thing that's not already public record is maybe the two-block area that that offender's living on at that time. So it's, you know, the difference of the information that's being provided to the public and anything that could reasonably be construed to harm a person or to defame a person, it's already public record. So whether there's a- If we were to hold, let's say, assume argument, if we were to hold that he has a pre-assessment liberty interest, and so that there has to be some sort of hearing before a person can get the risk three, would then that allow sex offenders to delay their classification and endanger the public? Is that part of the thought process here? I think that is part of the thought process. But also the process that's done both from the end-of-sentence review committee, which is covered by the Department of Corrections, who gathers up all the public documents, puts them together, and then gives a recommendation to the county of which level to put an offender at. Of course, the department doesn't make that decision. That's something the county does. But there are cases, including the WMX case, that indicates that when there's an investigative function, you know, there-excuse me-an investigative function, the end-of-sentence review committee's classification is an investigative function. It really doesn't affect a person's reputation. Okay. What is 716? What is RCW 716.040? It is kind of a catch-all provision that allows for someone to appeal a finding or a decision either made by a tribunal where there's no other- Is it administrative review under the Washington Code? No, it's actually-it's a catch-all provision. If there's a tribunal or some other body that makes a decision where there's no other means to appeal. So that's essentially what that provision is. I mean, I just don't see a defamation action as being exactly viable or practical. That doesn't-if you really-if you're having a classification problem to say, okay, now you can file a defamation action, that's a pretty thin reed to go out on. So now you're saying, as a practical matter, he would have potentially a superior court claim. Correct. Be able to appeal any arbitrary and capricious action in the superior court. So essentially, the due process happens, you get convicted of a sex crime, that then puts all these things in place. So you had due process to get there. Then there's all this classification that goes on in between. If there's a problem there, then people can file a writ or that they can- that if they think that something's a problem, that they can go in and ask for modification. That's all reviewable. But that there's no due process concerns in the middle, and there shouldn't be any constitutional rights or 1983 actions coming out of that. Is that- Absolutely. Who's going to talk about the Fifth Amendment? I was, but I'm down to one minute, and I don't want to short my- We'll give you an extra minute. Would you just explain to me if he claims that he alleges, and he argues on appeal, that he was asked these questions on the polygraph examination that he- that required him to state that he had committed prior sex offenses, and he didn't want to answer them. And as a result, he terminated the exam and threw him into jail for an extra 300 days, or something like that. Why isn't that the Fifth Amendment violation? Okay, well, there's actually three things that I want to address that are all involved in that question that hit each of those. Okay, one, two, three. One, two, three. First, he never actually took the polygraph. He never got past the signing the consent form stage. He refused because he didn't like the wording on it. That's in there under S.E.R. 25. He never took it, so he never got to a point where he was asked a question where there was an implication or could be an implication of his rights. There's a number of questions you ask during a polygraph to see that a probationer is doing what they're supposed to, are you living where you're supposed to, that sort of thing. He never got to the point to answer the questions. So, really, this claim is premature. But also, this self-incrimination claim is barred by HECT because he is required by his judgment and sentence to participate in polygraphs. And that amended judgment and sentence is S.E.R. 23. And the avenue to address this would have been a habeas corpus action, which would have been allowed under NONET because, although he was out of custody, he still was under supervision. So it doesn't come under a NONET exception, in other words. Yes, he had the ability to file a habeas claim, and he's got other habeas pending right now. So he is familiar with that avenue. But even if Mr. Pinion had properly raised his claim, even if he'd gotten to the point where he was asked an incriminating question, he still has the ability to say, you know, I want to invoke my right. But the fact is that his decision to invoke his right means he's not answering a question, and that is still a viable basis for a revocation under Murphy. Was this raised in the district court? I don't believe that it was. So with that, I'll leave it to my other counsel. Okay. I guess I have to be exceptionally quick. Yes. One, two, three, zip, zip. My name is Stephen Larson, and I represent Seattle Police Detective Robert Schilling. I think the basic question is, is Detective Schilling entitled to qualified immunity or not? And he is. And I think Humphrey's case is right on point. Because they got qualified immunity there, so it couldn't have been clearly established at the time that Detective Schilling was dealing with this? Correct. I don't know if any other questions.  There don't appear to be any further questions. Thank you. Thank you. Okay. A few items to clean up. On Russell, you don't have to overrule Russell. If you look at the cited page, 1094 of 124F3rd, the case states that the damage to one's reputation by a state actor does not violate a liberty or property interest, apart from some more tangible interests such as employment, which was not alleged in Russell. It is alleged here. That's a meaningful distinction. They do not foreclose this court finding relief for Mr. Pena under this statute. So you don't have to overrule Russell. It's not an impediment to this case. Well, you couldn't overrule Russell. You couldn't overrule Russell. And you couldn't even ask the court with a concurrence to say, we ought to take this in bank and overdo it. The other point we make on Russell in the briefing is it does not take into account the Connecticut v. Doe case. The Connecticut v. Doe case does not exactly decide it. But if you read that decision and you read the Second Circuit's underlying decision, which is part of the case law that feeds into Judge Bybee's case in Humphreys, you will see what the analysis is in terms of the stigma plus test. And here in our state, you have when someone is level three, they have this 880-foot boundary within which they can't live, the community protection zone. That's different from all these other cases. The other thing I'd like to point out quickly, the notion of a defamation action. You're right, Judge McKeon, that's not much relief, nor is a writ action under 716-040. Those are the kinds of so-called reliefs that the Humphrey and the underlying cases there did not cut it for people who were wrongfully accused of being child abusers and were put on a list. And so, Judge Callahan, you're exactly correct. If somebody is wrongfully accused, you need to have some place that you can go and get meaningful relief. This isn't a wrongfully accused case. It's a wrongfully accused of being a most likely to reoffend. Now you're getting into heck be Humphrey when you say he's wrongfully accused. Okay, I will mend my language, Your Honor. Okay. You don't want to get into that Humphrey. Wrongly listed, because that is what the stigma plus issue is all about. If someone is listed improperly and you have not had any opportunity to address what those new facts are, why you should or should not be now subject to an 880-foot restriction where you can live and work, then those post-determination reliefs really are meaningless. There's no remedy, no way to challenge that? Your Honor, you've seen the briefing. I've looked. I couldn't find it. Well, there's a way to challenge it after. There just isn't a way. You have to undo something that's done. Correct. Now he does have notice of how they he did have notice that that was factored in. So the question is, is that really enough? No, I'm not. I don't think the record's clear how much notice he had that this stuff was factored in. Why can't he, though? I mean, why can't he file? It's an administrative proceeding, in effect, and why can't he? No, it's not. The writ of review is an original action in the Superior Court. Let me just finish. What occurred here is an administrative proceeding. It can't run by arbitrary and capricious action. So why wouldn't the writ be an appropriate way to challenge that in the State Superior Court? I mean, if that's what happens, I mean, let's leave it. It's an after the fact. It's an after the fact. Correct. And you've already then had the deprivation. And what the Constantino and Paul v. Davis and those cases stand for is that you have a right to a hearing before you have a meaningful impingement. If you have a liberty interest. If you have a liberty interest. But if you don't have a liberty interest, I mean, he's already been adjudged to be a sex offender. Correct. So if you don't have a liberty interest in the exact classification, then a post-classification hearing would be sufficient. And I think it will help you, Your Honor, to read that Second Circuit decision in Dovey, Connecticut, in conjunction with the Supreme Court decision. The Supreme Court decision is very short, but I went through those very carefully and it was after looking at those and spending a lot of time with them that I realized what the Supreme Court is saying is if you have facts beyond the fact of your conviction, then we've got that liberty interest because you are getting your status changed. He's being labeled as dangerous, being labeled in a certain fashion. If you are being put on a list with the fact of your conviction, which is a public fact, you don't have any privacy interests. You don't have any other basis to challenge that. That's the facts. You're stuck with it. And Mr. Pena gets that. He understands that. He knows he has to register. As Judge Callahan indicated, it's the after conviction stuff. Are you like, I'm trying to figure out, like a probation report? Well, a probation report, if you're going to be revoked, you have a hearing in front of a court and you get to have that hearing. There's been no hearing here. No, you're sentenced and you have all this stuff that wasn't before the jury and that the judge has in order to determine what the proper sentence is and you get to have a chance to challenge it if you want. Correct. Is that what your analogy is here? That would be an appropriate analogy because there is no similar kind of opportunity for the defendant or the convicted person in this case to challenge it, to see what the information is and say, no, this is incorrect. No, this isn't proven. And in fact, under the Sentencing Reform Act in Washington, you have to have convictions that are proven. Does due process require that you get a hearing on what institution you get sent to? No. We're talking about the stigma plus. Doesn't that depend on a risk? You can end up at, what's the one, Pelican Bay, and you're in 23 hours a day. Yes, Your Honor. And there's no liberty interest in that. But we're talking about people who are being released to community custody. This only comes into play when you are released in community custody. Just go back to one thing. I think there's only the officer who I guess is represented by Mr. Larson was the only one who actually did anything that I could see on the change in his status from two to three. I'm still having some trouble understanding why the district court wouldn't be correct in saying that officer had qualified immunity. I mean, there was no established, if you read all these cases and all, there's no established liberty interest yet. Now, one could be established and then down the road an officer might need to look at this differently. But as of the date he was operating, I don't know what he would look to to say, ooh, bingo, I better do this differently. You have to talk about it this much. I mean, you know, so what would we look to to say, you know what? Mr. Larson is flat wrong. This is clearly established and his client dismissed it. You look to the Connecticut cases because those were sex offender cases, and when you look at them together. I mean, somebody in King County, Washington, or in the state of Washington is bound. By a U.S. Supreme Court decision? By a Connecticut case. If that's what the federal law is on the subject, Your Honor, then they would be. Otherwise, you don't have a basis for making a decision. Okay. One last point on the record, which was the claim that he never testified. If you look at the replacement excerpts, page 5 on January 12, 2006, he did begin questioning. He asserted his right to take the fifth, and it was then stopped. Was this raised below? Pardon? Was this located in the district court? That's the amended complaint, Your Honor. I know. But I don't think there was argument on this. Okay. Thank you. The case just argued is submitted for decision. You'll hear the next case listed on the calendar is Sotaro Sanchez v. Holder, which is submitted on the briefs. It is so ordered.
judges: Schroeder, McKeown, Callahan